UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| In re: | |
|---|---|
| CARMEN BAILEY | Chapter 13 |
| Debtor | Case No. 09-44760-HJB |

**PLAINTIFF'S OPPOSITION TO OBJECTION TO CONFIRMATION
BY WELLS FARGO BANK, NA**

NOW COMES THE DEBTOR and opposes the Objection of Wells Fargo Bank, NA to the confirmation of debtor's plan for the following reasons:

**I. FACTS**

Wells Fargo Bank, NA, claiming to be the holder of a mortgage on debtor's residence given to Shawmut Mortgage Co. in 1992, published notice of intent to foreclose and conducted an apparent foreclosure auction on October 23, 2009. Debtor commenced this case under chapter 13 on November 9, 2009, listing the servicing agency which had been collecting debtor's mortgage payments, Wells Fargo Home Mortgage, as a secured creditor. Debtor then commenced an adversary proceeding (No. 09-AP-04190) on November 23, 2009 seeking a declaratory judgment that Wells Fargo Bank, NA was not, in fact, the "holder" of the subject mortgage according to the record title, and therefore the purported foreclosure was ineffective under M.G.L. c. 244 §14 to terminate the equity of redemption, and thus the residence was property of her bankruptcy estate under 11 U.S.C. §541.

The adversary proceeding is under advisement on a motion to dismiss; and discovery has been stayed pending the outcome of that motion. During this time, the claims deadline on debtor's chapter

13 case expired and debtor submitted an amended plan to conform to the allowed claims. *Wells Fargo Bank, NA did not submit a claim.*

In the meantime, Wells Fargo Bank, NA has also not delivered a deed to the property to the purported purchaser, no purchase price has been paid beyond the initial deposit, and no deed has been recorded at the Middlesex Registry of Deeds despite the passage of almost a year.

## II. ARGUMENT

**A.    Wells Fargo Bank, NA has no standing to object.**

Although listed as a secured creditor on debtor's schedules, neither the objecting creditor (Wells Fargo Bank, NA) nor its servicing agent (Wells Fargo Home Mortgage) filed a proof of claim in the chapter 13 proceeding.[1]  Since its secured lien will survive the debtor's discharge, Wells Fargo was entitled to ride out the chapter 13 proceeding and not participate in any plan distributions at its option.  <u>Johnson v. Home State Bank</u>, 501 U.S. 78, 83 (1991); <u>Dewsnup v. Timm</u>, 502 U.S. 410 (1992).  However, by opting to stay out of the chapter 13 plan and avoid asserting an inconsistent position, Wells Fargo waived its right to object to the confirmation of the plan.

Wells Fargo's objection does not specifically rely on any particular provision of the bankruptcy code, i.e., §1322 or §1325.  Instead, it alleges merely that the property "was sold at a lawfully conducted foreclosure auction" and there is little likelihood of debtor succeeding on the merits in the adversary proceeding.

Creditors are generally limited to objections to plan confirmation in chapter 13 cases for three reasons: (1) the plan does not meet the best interests of the creditors test; (2) the plan does not meet the best efforts test; and (3) the debtor has not proposed the plan in good faith; and secured creditors can also object to the value of collateral.  None of those claims are explicitly or implicitly made by Wells Fargo in its objection.

---

[1] A proof of claim was filed by FNMA as successor to Wells Fargo Bank, NA for an unrelated unsecured loan dated June 22, 2008.

Most importantly, however, with respect to a secured claim, a plan is presumptively entitled to confirmation if any one of three conditions are met:

a.  the holder of the secured claim accepts the plan; or

b.  the holder of the secured claim retains the lien until the payment of the underlying debt under non-bankruptcy law[2]; or

c.  the debtor surrenders the property.

11 U.S.C. §1325(a)(5). It appears that the secured creditor has no say in the matter if any one of those three conditions are satisfied. Since Wells Fargo opted to not participate in the chapter 13 proceeding, it retains its lien until repayment under nonbankruptcy law, and it thus lacks standing to object to confirmation of the plan under 11 U.S.C. §1325(a)(5).

**B.    The property was not "sold" at a foreclosure sale conducted in accordance with applicable nonbankruptcy law.**

11 U.S.C. §1322(c)(1) gives the debtor the right to cure defaults on mortgage loans on her residence "until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankrtupcy law." Although a foreclosure auction ostensibly took place on October 23, 2009, to date no deed evidencing that alleged "sale" has been recorded; and for all apparent purposes, the "sale" that did take place has not been completed.

In the adversary proceeding, Debtor alleges that irregularities in service of the foreclosure notice and irregularities in the recordation of assignments and succession of corporate interest fail to demonstrate reliable "record and marketable" title in Wells Fargo at the time of the alleged sale.

Debtor acknowledges the body of caselaw in favor of the presumption that, in a Massachusetts foreclosure auction, secured property is considered "sold" upon the execution of the auctioneer's memorandum of sale. See, e.g., In Re Crichlow, 322 B.R. 229 (Bankr. Mass. 2004, Hillman, J.). This is

---

[2] and some other conditions which are not relevant because they are satisfied, i.e., the value of the collateral is more than the amount of the claim, the property distributed by the plan is in equal monthly payments, etc.

Page 3

so, even though the sale is not "completed" until days or weeks later when the balance of the sale proceeds are paid and the foreclosure deed delivered, accepted and recorded. In the circumstances of this case, however, this presumption appears to propagate an absurd result and warrants reconsideration; or at the least, an open-minded look at whether such a presumption can be applied to dictate that property is considered finally "sold" when almost a year later the debtor continues to reside in the premises; no deed has ever been delivered to a purchaser; nor accepted by the purported purchaser; nor recorded at the registry of deeds; and no affidavit of entry and sale has been recorded.

Although much emphasis has been focused on carefully construing the clause: "until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankrtupcy law," no cases have yet considered the simple and obvious definition of "sale:" "the act of selling; *specifically*: the transfer of ownership of and title to property from one person to another for a price." Merriam-Webster Dictionary online at http://www.merriam-webster.com/dictionary/sale viewed August 3, 2010. There appear to be three elements of a "sale" in the dictionary sense:

a. transfer of ownership *and title*;

b. from one person to another

c. for a price.

Clearly those elements have not been met in this case. No transfer of ownership has take place to the purported auction buyer. At best, he has a contract right. Clearly no title transfer has taken place because no deed has been recorded. Both ownership and title are still in Wells Fargo (Massachusetts being a "title theory" state, the debtor owned only the "equity of redemption"). Finally, no "price" has been paid. A deposit, perhaps, but the full sale proceeds were never paid.

Wells Fargo proposes a result in this case that tortures the application of the Massachusetts statutes. More than ten months after the foreclosure auction, no closing has yet taken place. The balance of sale proceeds have not been paid. No deed has been delivered or recorded. Most importantly, no surplus funds have been disbursed to the debtor, although required under state law.

Still more absurdly, because of the state of the record title, debtor remains personally liable for post-petition accrual of real estate taxes, condominium fees, municipal light charges, and other expenses.

Certainly, Congress did not envision property being finally "sold" when the proceeds are not paid until a year later. A certain amount of regularity is presumed, which did not occur in this case owing to the defects in title and notice. The "regularity" is presumed by the statutes' use of the term "sale that is conducted in accordance with applicable nonbankruptcy law." The debtor may be wrong about the defects in title, but the fact remains that the defects were sufficiently suspicious to preclude a willing buyer from accepting the title in that state. That fact alone demonstrates manifestly that the foreclosure sale was not "conducted in accordance" with state law, since state law requires demonstrable record and marketable title so as not to chill a willing buyer; and in order to demonstrate qualification as a "holder" under M.G.L. c. 244 entitled to foreclose. U.S. Bank National Association etc. v. Ibanez, Mass. Land Court No. 08-Misc-384283-KCL, Memorandum And Order On The Plaintiffs' Motions To Vacate Judgment, October 14, 2009 (and a consolidated case)(on appeal to the Supreme Judicial Court, pending oral argument on October 7, 2010, No. SJC-10694).

The absurdity of the result Wells Fargo would foist on the court is patently apparent since, if the purported foreclosure sale generated a surplus[3], debtor should have been paid her share of the surplus months ago. The debtor was entitled to an accounting of the surplus following the sale, M.G.L. c. 244 §20, but has never gotten one. A mortgagee must pay over to the mortgagor any surplus generated at a foreclosure sale pursuant to M.G.L. c. 183 § 27, but she has not been paid. "Surplus" is any amount recovered at a foreclosure sale above the amount owed to the mortgagee, including fees and costs. Duclersaint v. Federal National Mortgage Association, 427 Mass. 809, 812 (1998). Although no deadline is explicitly imposed by c. 183 §27, surely ten months is too long. The

---

[3] The property was valued at $255,000 with only the single $77,000 mortgage lien. On information and belief, there should have been a sizable surplus.

Massachusetts legislature made a command of foreclosing mortgagees: account and pay over the surplus to the mortgagor, and created remedies of law to enforce it.

These concerns must be balanced against 11 U.S.C. §541 which defines property of the bankruptcy estate: "*all legal or equitable interests* of the debtor in property as of the commencement of the case." Clearly, according to the Massachusetts cases, where the foreclosure deed has not yet been recorded, the debtor retains some equitable interest in the property, however slight, even thought it may not be the full equity of redemption. As noted by Judge Hillman in Crichlow, supra, Massachusetts cases recognize some equitable interest in the mortgagor even after the execution of the memorandum of sale: Beal v. Attleboro Sav. Bank, 248 Mass. 342 (1924); White v. Masciarelli, 267 Mass. 596 (1929); Schanberg v. Automobile Co. of Hartford Conn., 285 Mass. 316 (1934); *contra* Outpost Café v. Fairhaven Savings Bank, 3 Mass. App.Ct. 1 (1975). Judge Hillman was concerned with a foreclosure sale that proceeded in the ordinary course: the sale was followed shortly thereafter by a closing, i.e., the exchange of funds, delivery of a deed, and the recordation of a foreclosure deed (in other words, "conducted in accordance with applicable nonbankrtupcy law"). In this case, however, the sale was not "conducted in accordance with applicable nonbankrtupcy law" since it was never completed, even to this day. Under Judge Hillman's view, although he recognized that "the mortgagor continues to have rights in the property and against the mortgagee even if there is no equity of redemption" the critical fact was when the equity of redemption was terminated, not when the sale was, in fact, concluded. Id. at 237. The facts of this case show the insufficiency of that focus.

It is important to note the history of conventional Massachusetts mortgage foreclosure practice. First of all, until 1994, a statute required the execution and recording of an affidavit of the mortgagee within 30 days of a sale. O'Meara v. Gleason, 246 Mass. 136 (1923). The 30-day requirement was taken out of the statute in 1994. St. 1994 c. 341. The legislature did not, however, remove the requirement of recording the affidavit of entry; it merely removed the apparently tight 30-

day deadline. The affidavit must still be recorded. Since the statute specifies the affidavit must be recorded, but not when, the obvious question becomes: when? Two observations can be discerned from the change to the statute: (1) the affidavit must be recorded after the sale; and (2) 30 days was too short. By inference, we can assume the Massachusetts legislature was envisioning a recording closer to 30 days than never.

This is borne out by conventional Massachusetts practice. The most commonly used real estate forms manual recommends the closing take place 30 days after the auction, and that time is of the essence. See Eno and Hovey, Real Estate Law (Massachusetts Practice Series, Vol. 28) §696, copy attached as Exhibit A. Massachusetts law has evolved to oblige the mortgagor's best interests by attracting and encouraging willing buyers for the highest available price by accommodating their ability to obtain financing by extending the short 30 day deadline. However, it cannot be seen to be a wrong without a remedy since the requirement to record the affidavit still exists.

Massachusetts foreclosure cases consistently recite that the basic rule of law applicable to the foreclosure of real estate mortgages is that "a mortgagee in exercising a power of sale in a mortgage must act in good faith and must use reasonable diligence to protect the interests of the mortgagor." West Roxbury Co-op. Bank v. Bowser, 324 Mass. 489, 492 (1949); Manoog v. Miele, 350 Mass. 204, 206 (1966)l; Union Mkt. Nat'l Bank v. Derderian, 318 Mass. 578, 581-582 (1945); Sandler v. Silk, 292 Mass. 493, 496 (1935); Cambridge Sav. Bank v. Cronin, 289 Mass. 379, 382 (1935). Seppala & Aho Construction Co. v. Petersen, 373 Mass. 316, 320-20 (1977). This duty extends not only for the protection of the mortgagor but also those claiming under him, including those junior liens and other creditors. Judge Feeney has observed, correctly, in keeping with the duty espoused in the above cases, "a condition precedent to cutting off the mortgagor's right of redemption is that the foreclosure sale is fairly conducted and there is no defect in the proceedings." In Re Hall, 188 B.r. 476, 482 (Bankr. Mass. 1995). Thus, the rule that the sale happens when the auctioneer's hammer falls is tempered with

the requirement that the sale process, as a whole, comports with the Massachusetts concept of good faith toward the mortgagor's interests.

In this case, since the foreclosure sale was never completed, debtor's equitable continues to lurk. At some point, the reasonable time for recording the affidavit of entry has passed and debtor's interest matured back to her full equity of redemption owing to the delay -- or inability -- of the mortgagee to conclude the sale. At that point, no title examiner would accept the title from Wells Fargo's purported foreclosure sale, and the whole thing would have to be re-done.

Either Judge Hillman got it wrong and "Outpost Café *is* about the redemption rights, not when a sale is complete;" or the unique twist of facts in this case simply do not fit the mold for analysis under those criteria. In Re Crichlow, supra at 237. When title irregularities prevent prompt closing, and the sale is never concluded, the "sale" cannot be said to have occurred upon the execution of the memorandum of sale. At least the "sale" cannot be said to be "final" in accordance with nonbankruptcy state law.

### III.  CONCLUSION

For the foregoing reasons, the objection of Wells Fargo Bank, NA should be stricken; or in the alternative overruled.

Dated:  August 3, 2010

                                                    CARMEN BAILEY
                                                    BY HER ATTORNEY:

                                                       /s/ Michael J. Tremblay
                                                    MICHAEL J. TREMBLAY,   BBO 502133
                                                    277 Main St.
                                                    Marlborough, MA 01752
                                                    Tel. 508-485-4500
                                                    Fax. 508-449-3969
                                                    Email:  attorney@tremblay.com

## CERTIFICATE OF SERVICE

  I, Michael J. Tremblay, do hereby certify that I have served the foregoing OPPOSITION TO OBJECTION OF WELLS FARGO BANK, NA TO CONFIRMATION upon the parties listed below via electronic service this date:


Richard King
USTPRegion01.WO.ECF@USDOJ.GOV

Christine Murphy on behalf of Defendant Wells Fargo Bank, NA
cmurphy@harmonlaw.com

Denise M. Pappalardo
denisepappalardo@ch13worc.com, paper@mab.uscourts.gov

Molly H. Donohue, Esq.
Attorney, Office of Chief Counsel, SB/SE
on behalf of Creditor Internal Revenue Service/IRS
molly.h.donohue@irscounsel.treas.gov

Deirdre M. Keady
mabk@harmonlaw.com



☒  and to the parties listed in the attached list by first class mail.

Dated:  August 3, 2010

          /S/ Michael J. Tremblay
         MICHAEL J. TREMBLAY   bbo#502133
         277 Main St.
         Marlborough, MA 01752
         Tel. (508) 485-4500

         Service list by mail:

☐  Carmen M. Bailey
   111 Brigham Street, Unit #19B
   Hudson, MA 01749

EXHIBIT A

**§ 695** OTHER FORMS, OPINIONS, AND STANDARDS Pt. 3

described in the second paragraph of the Petitioner's Complaint, and foreclosure of said mortgage by entry and possession and by power of sale be and hereby is authorized and approved.

_____ is the holder of the mortgage given by _____ and _____ to it dated _____, and recorded with _____ County Registry of Deeds in Book \_\_\_ Page \_\_\_.

## § 696. Memorandum of Sale

_____, Massachusetts

_____, 19\_\_

I, the undersigned, hereby acknowledge that I have this day purchased at Mortgagee's Sale at Public Auction from _____, Auctioneer, for the sum of _____ Dollars ($_____) that certain parcel of land with the buildings thereon situated in _____, Massachusetts, located at _____ now or formerly of _____ and described in the notice of Mortgagee's Sale attached hereto.

I agree to comply with the terms of sale as stated in said notice and also the additional terms read by the Auctioneer at the sale, a copy of which is attached hereto.

I have paid to the Auctioneer a non-refundable deposit in the sum of $_____ in accordance with the terms of the sale and I understand that said deposit shall be forfeited to the use of _____ if I fail to comply with all of the terms of sale.

The balance of the purchase price is due and payable at the office of _____, _____, _____, Massachusetts, on or before thirty (30) days from this date, in certified check, cashier's or bank treasurer's check or other form acceptable to the Mortgagee. Time is of the essence of this agreement.

No personal property of any kind is included in this agreement.

I understand that title is subject to all unpaid real estate taxes, water bills, municipal liens, betterments and any other encumbrances of record and that it is my obligation to pay for the Massachusetts document tax stamps as well as all recording fees for the transaction.

WITNESS:

_____     _____
                                    Purchaser

_____     _____
                                    Auctioneer

## § 697. Mortgage Discharge Including Assignment of Leases and Rents and UCC Financing Statements

_____, holder of a Mortgage, Security Agreement, and Assignment of Leases and Rents from _____ to _____ dated _____ recorded